Robert HENNINGS et al.,
Plaintiffs-Appellants,

v.

Harry GRAFTON, in capacity as
County Clerk, et al.,
Defendants-Appellees.

No. 75–1178.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1975.

Decided Oct. 2, 1975.

Rehearing En Banc Denied Nov.
11, 1975.

---

Thomas F. Londrigan, Springfield, Ill., Thomas R. Meites, Chicago, Ill., John P. O'Rourke, Danville, Ill., for plaintiffs-appellants.

S. John Muller, Charleston, Ill., William H. Hillier, Chicago, Ill., for defendants-appellees.

Before MOORE, Senior Circuit Judge,* and PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

In this class action brought under 42 U.S.C. § 1983 on behalf of all voters of Coles County, Illinois, plaintiffs-appellants seek equitable relief requiring that the 1974 election for county offices be reconducted because of alleged irregularities. The District Court, after a trial, denied relief. We affirm.

The suit was filed by six residents and voters of the county three weeks after the November 5, 1974, general election.

---

* The Honorable Leonard P. Moore, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

Named as defendants in their official capacities were the county clerk, county sheriff, state's attorney, county treasurer and members of the county board. Also named, individually, were the newly elected clerk, state's attorney and county board members. The complaint alleged inaccurate tabulation of votes and "arbitrary" action by the defendant county clerk as chief election official, all stemming directly or indirectly from the malfunctioning of electronic voting devices that were being used for the first time. On notice after hearing, the District Court granted a temporary restraining order prohibiting the newly elected candidates from assuming office. This order was continued in force by agreement of the parties while the court proceeded directly to trial on the merits. The court filed a memorandum opinion and order deciding the issues in favor of defendants on December 27, 1974, and entered judgment accordingly on January 15, 1975.

The electronic voting devices were used in the election pursuant to the voting-machine requirement of state law. The system the defendant election officials chose was one that had never been used in any election, and its performance was less than satisfactory. Although it had been approved by the State Board of Elections, plaintiffs contend that it did not meet state requirements. Mechanical and other operating difficulties of various degrees of seriousness occurred at many of the 50 precincts, and there was uncontested evidence that a number of the machines failed to record votes properly. In addition, according to plaintiffs' allegations, election officials failed to provide paper ballots as a substitute, which caused the occurrence of long waiting lines; failed to exercise proper supervisory oversight in checking access to the machines and preserving the results of the election; and refused to conduct a statutory retabulation to determine the cause of these discrepancies. Plaintiffs alleged that as a result of the misfeasance of these officials, plaintiffs were deprived of their constitutionally secured rights to vote and to have their votes accurately recorded.

The District Court made a number of findings of fact, which we hold are not clearly erroneous. In particular, the court found that even giving the losing candidates credit for the votes concededly unrecorded, the election results would not have changed in any race except that of sheriff, and only there if the loser had obtained unlikely percentages. The court placed some weight on that fact in reaching its decision. The court also found that the plaintiffs failed to prove their allegation that persons were denied the right to vote because of long lines. No specific findings were made with respect to the plaintiffs' claims of unauthorized access to the machines and the failure to seal the election results, but no evidence of manipulation was introduced, and one of the defendants testified that the magnetic tapes on which the results from each machine were recorded were still available at time of trial. There was also unrebutted evidence that voters were allowed to vote a second time at some polling places where it was discovered that one of the voting devices had failed to record votes; plaintiffs claimed impropriety in those cases where the election judges were without personal knowledge as to which of two or more devices in a polling place the voter had used. The District Court denied plaintiffs' offer of proof that paper ballots, where their use was authorized by the defendant county clerk, were authorized in precincts on the basis of likely party preference.

The primary issue presented for our consideration is whether the facts, as found by the District Court or, where there were no findings, as shown by the evidence, establish a constitutional deprivation cognizable under section 1983. The starting point for analysis is a recognition that the Constitution protects the right of all qualified citizens to vote in state and federal elections, *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and to have their votes counted without debasement or di-

lution, *Hadley v. Junior College District of Metropolitan Kansas City*, 397 U.S. 50, 52, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). It is no answer to the charges made here that state law could provide the relief sought. *McNeese v. Board of Education*, 373 U.S. 668, 670–671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Similarly, the fact that political issues are involved does not, in itself, provide a reason for abstaining. See *Smith v. Cherry*, 489 F.2d 1098, 1101 (7th Cir. 1973), *cert. denied*, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974) (citing cases). And, the lack of intent to violate the plaintiffs' constitutional rights would not necessarily be a defense if the defendants should have known that their conduct would have that effect. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

■ It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. Mere violation of a state statute by an election official, for example, will not. See *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Infringements of voting rights found to have risen to a constitutional level include dilution of votes by reason of malapportioned voting districts or weighted voting systems, *Reynolds v. Sims, supra,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); purposeful or systematic discrimination against voters of a certain class, *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), geographic area, *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Communist Party of Illinois v. State Board of Elections,* 518 F.2d 517 (7th Cir. 1975), or political affiliation, *Shakman v. Democratic Organization of Cook County,* 435 F.2d 267 (7th Cir. 1970); election frauds, *United States v. Saylor,* 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944); *United*

*States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); and other wilful conduct which undermines the organic processes by which candidates are elected, *Smith v. Cherry, supra,* 489 F.2d 1098 (placing bogus candidate on primary ballot); *Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1970) (failure to give notice to prospective candidates of new and rigorous standards for ballot placement and denial of access to disqualified petitions).

■ In contrast, the record here shows at most irregularities caused by mechanical or human error and lacking in invidious or fraudulent intent; it does not show conduct which is discriminatory by reason of its effect or inherent nature. Voting device malfunction, the failure of election officials to take statutorily prescribed steps to diminish what was at most a theoretical possibility that the devices might be tampered with, and the refusal of those officials after the election to conduct a retabulation, assuming these events to have occurred, fall far short of constitutional infractions, absent aggravating circumstances of fraud or other wilful conduct found not to exist by the District Court and not shown by any evidence offered. Similarly, allowing voters to vote a second time in precincts where the voting devices broke down without establishing procedures to assure that their previous votes had not in fact been registered, assuming this occurred, was of course not an adequate discharge by election officials of their responsibilities, but it did not rise to the level of a constitutional violation.

■ Plaintiffs' claim that such long lines existed at polling places where voting machines malfunctioned that voters were denied the opportunity to cast ballots, even considering this to be a constitutional deprivation, was found by the District Court to be without substance. Plaintiffs' offer to prove that when machines malfunctioned paper ballots were furnished only in precincts where voters were believed to favor particular candidates was of such a nonspecific and conclusory nature that it was properly excluded by the District Court. Moreover,

that court's finding that plaintiffs had failed to prove their allegations that persons were denied the right to vote because of long lines makes the offered evidence irrelevant.

■ Except for the overall supervision of the county clerk, or his counterpart, and appointed subordinates, the work of conducting elections in our society is typically carried on by volunteers and recruits for whom it is at most an avocation and whose experience and intelligence vary widely. Given these conditions, errors and irregularities, including the kind of conduct proved here, are inevitable, and no constitutional guarantee exists to remedy them. *Pettengill v. Putnam County R–1 School Dist.,* 472 F.2d 121 (8th Cir. 1973); *Powell v. Power,* 436 F.2d 84 (2d Cir. 1970); see also *Means v. Wilson,* 383 F.Supp. 378 (D.S.D. 1974). Rather, state election laws must be relied upon to provide the proper remedy. See Ill.Rev.Stat. ch. 46, §§ 23–1 to 23–30 (1973).

For these reasons, then, plaintiffs have failed to establish a claim under 42 U.S.C. § 1983, and the judgment of the District Court denying relief must therefore be affirmed.

Affirmed.