In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3224

NICOLE KOZUSZEK and WESLEY KOZUSZEK, JR.,

*Plaintiffs-Appellants*,

*v.*

DALE BREWER, in her individual capacity, and
GEORGE NELSON, in his individual capacity,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 05 C 394—**Rudy Lozano**, *Judge*.

ARGUED APRIL 8, 2008—DECIDED OCTOBER 8, 2008

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Nicole Kozuszek and her brother Wesley Kozuszek, Jr., lived in Porter County, Indiana. On November 4, 2003, the Kozuszeks voted in an Indiana general election, but because of questions surrounding their residence, election officials spoiled (i.e., did not count) their ballots. Now the Kozuszeks have sued two Porter County officials under 42 U.S.C. § 1983, alleging that these officials violated the Kozuszeks' federal

constitutional rights by improperly spoiling their ballots. Because there is no evidence that these officials acted willfully to impair the Kozuszeks' votes, we affirm the district court's grant of summary judgment in the officials' favor.

## I. BACKGROUND

On October 5, 2003, about one month before the election, Wesley Kozuszek reported his car stolen to the police in Chesterton, a town of about 11,000 people in Porter County. A police officer met Wesley at his Chesterton apartment, which he had rented through May 2004. The police report on the incident listed this Chesterton address for Wesley and indicated that he resided there. Wesley's sister, Nicole Kozuszek, also provided a statement listing the same Chesterton address as her "home."

The Kozuszeks, however, had registered to vote based on their parents' address in the neighboring town of Porter, which had a population of about 5,000. Because Wesley and Nicole would be unable to vote in person on election day, they had obtained absentee ballots. In particular, Wesley Kozuszek was voting absentee because he was working on election day as a Democratic poll watcher at a Chesterton polling place.

About a week before the election, Chesterton Police Chief George Nelson attended a training session for election workers. Wesley was not at the meeting, but like the other workers, he had submitted a "claim voucher" that indicated where he wanted his paycheck mailed. Nelson

noticed that Wesley had reported a Porter address, but recalled that the recent police report describing the theft of Wesley's car had listed a Chesterton address. Nelson mentioned this discrepancy to Dale Brewer, a Republican member of the Porter County Election Board and an election official who happened to be near Nelson during the training session.

Brewer claims she did not think about the matter again until election day, when she saw Wesley volunteering at the Chesterton precinct. Brewer approached Wesley and asked him, "How do you like living in Chesterton?" Brewer claims Wesley responded that he liked living in Chesterton okay, but that he only slept there once in a while. Wesley claims he told Brewer, "No, I don't live in Chesterton. I live at home with my mother in Porter." In any event, Brewer claims she thought Wesley's response was strange, so she decided to investigate further.

At Brewer's request, the Chesterton police (who were stationed in the same building where Wesley was working) provided Brewer with the police report of the car theft. Brewer reviewed the report and separately contacted the two other members of the Porter County Election Board, Stankiewicz (a Democrat) and Bozik (a Republican), to tell them about the discrepancy in the addresses. The two other board members agreed with Brewer that if there was a residence conflict, a challenge should be issued.

Brewer then contacted Porter election personnel and discovered that the Kozuszeks were registered to vote in the town of Porter and were casting absentee ballots there.

Brewer went to the precinct where the Kozuszeks' ballots would be tallied and filled out a challenge form, listing her reasons for the challenge as being the Chesterton police report and a "3-0 vote election board." She did not mention her encounter with Wesley earlier that day and did not provide Wesley's claim voucher that listed a Porter address.

Poll inspector Rita Newman did not rule on Brewer's challenge until the polls had closed, at which time she spoiled the Kozuszeks' ballots. Brewer and Nelson do not contest the Kozuszeks' claim that this spoliation was in error.

On November 1, 2005, the Kozuszeks brought this suit for monetary damages under 42 U.S.C. § 1983. They claim that Brewer and Nelson violated their right to vote and their due process and equal protection rights under the United States Constitution. Specifically, the Kozuszeks allege that Brewer challenged their votes because their mother was a Democrat who was running for re-election as Porter town council president. The Kozuszeks have also brought supplemental claims under the Indiana constitution and Indiana common law.

After denying a motion to dismiss, the district court granted the defendants' motion for summary judgment on the Kozuszeks' federal constitutional claims and declined to exercise supplemental jurisdiction over the state claims, which were dismissed without prejudice. The Kozuszeks then filed this appeal, which challenges the district court's decision on their federal claims.

## II. ANALYSIS

**There was no willful impairment of the Kozuszeks' right to vote.**

Both parties agree that the Kozuszeks' federal constitutional claims are governed by *Bodine v. Elkhart County Election Bd.*, 788 F.2d 1270 (7th Cir. 1986), in which we laid out the requirements for election fraud claims under section 1983. We held that "section 1983 is implicated only when there is '*willful* conduct which undermines the organic processes by which candidates are elected.'" *Id.* at 1271-72 (quoting *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)) (emphasis in *Bodine*). By "willful" we meant, at a minimum, that the alleged perpetrators had acted with the intent of undermining the electoral process or impairing a citizen's right to vote. *See Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 343 (7th Cir. 1987) ("[I]ntent is an essential ingredient of a constitutional election fraud case under § 1983."); *see Bodine*, 788 F.2d at 1272 (plaintiffs' section 1983 claim failed because at most it alleged "willful neglect" and not "fraud or other willful conduct"). So, construing all facts in the light most favorable to the Kozuszeks, the crucial question is whether a reasonable jury could conclude that Brewer and Nelson willfully acted to spoil the Kozuszeks' ballots. *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 755 (7th Cir. 2008).

As a preliminary matter, we note there is no evidence that Nelson did anything wrong here. The only evidence tying Nelson to anything material in this case is that: (1) Nelson correctly noticed an inconsistency between the Porter address that Wesley Kozuszek reported on his

claim voucher and the Chesterton address he reported when his car was stolen, and (2) Nelson pointed out this disparity to Brewer, an election official who could further investigate the matter. No reasonable jury could conclude on these facts that Nelson was part of some nefarious scheme to spoil the Kozuszeks' ballots. Nelson simply reported a possible instance of voter fraud to an appropriate person who could handle the matter.

The Kozuszeks also hint at a Capulet/Montague-style feud between Chesterton and Porter officials, which they suggest might have tainted Nelson's decisionmaking. But the Kozuszeks provide little detail on the alleged beef (the Kozuszeks' attorney suggested at oral argument that it related to annexation issues) and at any rate, the Kozuszeks do not connect the dispute to Nelson. So this allegation is just unsupported conjecture, which has no place in our summary judgment analysis. *See Joseph P. Caulfield & Assocs. v. Litho Prods.*, 155 F.3d 883, 891 (7th Cir. 1998).

The Kozuszeks have a somewhat stronger case against Brewer, since she was the central figure involved in challenging their votes. But the Kozuszeks present no direct evidence that Brewer engaged in fraud or other willful conduct. Instead, they point to a "mosaic" of circumstantial evidence that they claim shows that Brewer "willfully" undermined the election process. *See Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 750 n.2 (7th Cir. 2006) ("The only difference between a claim under Title VII and a claim under § 1983 is who can be named as a defendant in the action."); *Sylvester v. SOS Children's Vills. Ill.,*

*Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) ("A case of discrimination [under Title VII] can [like a mosaic] be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: 'a number of weak proofs can add up to a strong proof.'" (quoting *Mataya v. Kingston*, 371 F.3d 353, 358 (7th Cir. 2004))); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (a jury can infer intentional discrimination in a Title VII case based on a "convincing mosaic of circumstantial evidence" that "point[s] directly to a discriminatory reason" (internal quotation marks omitted)).

The Kozuszeks' "mosaic" has two main pieces. First, the Kozuszeks claim that Brewer waited until election day to start investigating Wesley because she knew he would be occupied and unable to thwart her last-minute challenge. Second, they claim that Brewer should have informed the poll inspector that Wesley had told Brewer that he lived in Porter and had submitted a claim voucher listing a Porter address.

We agree with the district court that no reasonable jury could conclude on these facts that Brewer acted willfully to spoil the Kozuszeks' ballots. First, while Brewer *could* have begun looking into Wesley's inconsistent addresses after talking with Nelson a week before the election, she was not *required* to do so. More importantly, the Kozuszeks have presented no evidence that Brewer

delayed her investigation for an impermissible reason. Brewer, on the other hand, has a rational explanation for the delay—when Nelson told her about the conflicting addresses, she didn't know whether Wesley was registered to vote, and if so, where he was registered. She only became suspicious of Wesley after she ran into him on election day and he answered her question about his residence in a strange way that conflicted with what was on the police report. The Kozuszeks have not presented any evidence that casts doubt on Brewer's explanation.

Second, even though Brewer could have informed the poll inspector about the claim voucher and her earlier conversation with Wesley, there is no evidence that she violated her job duties by failing to do so. And again, the Kozuszeks do not provide any evidence that Brewer deliberately withheld this information so that their ballots would be spoiled. In fact, the poll inspector already had all the information she needed to resolve the challenge, as she had evidence that Wesley and Nicole didn't live in Porter, where they were registered to vote. *See* Ind. Code. § 3-11-10-21 (2003) ("The vote of an absentee voter may be challenged at the polls for the reason that the absentee voter is not a legal voter of the precinct where the ballot is being cast. The precinct election board may hear and determine a challenge under this section as though the ballot was cast by the voter in person."); *id.* § 3-11-10-22; *id.* § 3-11.5-4-15; *id.* § 3-11.5-4-16. And there is no evidence that the poll inspector did not exercise her own judgment, independent of Brewer, when she decided to spoil the Kozuszeks' ballots.

The Kozuszeks also claim that Brewer "misrepresented" to the poll inspector that her challenge was pursuant to a "3-0 vote election board." But there is no indication this was a willful misrepresentation. Brewer had contacted the two other board members and told them about the potential residency problem. They agreed with Brewer that a challenge would be appropriate if there was an address discrepancy, which Brewer proceeded to confirm. So even if the other board members technically did not "vote" on the matter, they certainly approved of Brewer's actions, and her description of a "3-0 vote" does not suggest she acted willfully.

The Kozuszeks further allege that Brewer spoiled their ballots because she was a Republican commissioned to help defeat Porter Democrats, including the Kozuszeks' mother. Apart from being pure speculation, the Kozuszeks' allegation implies that a party member aggrieved by an election can successfully sue under section 1983 simply because a rival party administered the election. That neither makes sense nor accords with the proper role of the federal courts. *See Bodine*, 788 F.2d at 1272 ("section 1983 does not cover garden variety election irregularities" (characterizing *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978))); *see also Dieckhoff v. Severson*, 915 F.2d 1145, 1148 (7th Cir. 1990) (noting that courts must balance protecting "the fundamental right to vote enshrined in the first and fourteenth amendments with the avoidance of excessive entanglement of federal courts in state and local election matters (i.e., federalism)"). At any rate, one of the board members who gave the go-ahead to Brewer was a Democrat (Stankiewicz), which takes the sting out of the Kozuszeks' allegation.

The Kozuszeks also criticize Brewer for not asking Wesley to further explain his residency situation when she ran into him, and they question her decision to look into Nicole Kozuszek's residency, given that Wesley was the one with the conflicting addresses. Like the other pieces in the "mosaic," we do not see how these actions show that Brewer violated her job duties or engaged in willful conduct. Regarding Wesley, it's not clear what further questioning would have accomplished, since he claims that he had already and unequivocally told Brewer that he lived in Porter, not Chesterton. Regarding Nicole, Brewer saw on the police report that she had also listed the Chesterton address as her "home." Brewer apparently knew of Nicole (remember it's a small community) and had thought she was still living with her folks in Porter. So Brewer became curious whether Nicole had changed her voter registration information after her apparent move to Chesterton. The Kozuszeks present no evidence that casts doubt on this explanation or suggests that Brewer was on a Kozuszek witch hunt. So there was no constitutional violation here.[1]

---

[1] Additionally, because Brewer and Nelson did not violate the Kozuszeks' constitutional rights, they are shielded from liability by qualified immunity, which generally protects state actors from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006); *see also Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

One final observation. In addition to finding that the defendants had not acted willfully, the district court noted that "[t]here is no evidence that any elected position in [the] election was decided by two or less votes. As such, there can be no real argument that the [spoliation] of these two votes either undermined the election or caused the election to be unfair." This holding implies that any level of election fraud is fine, so long as the fraud doesn't impact the final results of an election. But an election is more than just a sum total of votes. It is also about the *act* of voting—an individual's ability to express his or her political preferences at the ballot box. An official who willfully interferes with this act violates the Constitution, regardless whether the vote would have affected the election outcome. *See Bodine*, 788 F.2d at 1271-72. For example, a Democrat whose ballot is willfully spoiled can sue under section 1983 even if she lives in the "reddest" of states (where her candidate will lose) or the "bluest" of states (where her candidate will win regardless of her vote). So we expressly disavow the district court's reasoning on this point.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.