# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2946

_____

Minnesota Voters Alliance; Minnesota Freedom Council; Sondra Erickson; Montgomery Jensen; Ron Kaus; Jodi Lyn Nelson; Sharon Stene, as the guardian and friend for James Stene; Richard M. Smisson; Kathleen M. Olson

*Plaintiffs - Appellants*

v.

Mark Ritchie, individually and in his official capacity as Secretary of State for the State of Minnesota, and his successors; Lori Swanson, individually and in her official capacity as the Minnesota Attorney General, and her successors; Joe Mansky, individually and in his official capacity as the Elections Manager for Ramsey County, Minnesota, and his successors; John J. Choi, individually and in his official capacity as the County Attorney for Ramsey County, Minnesota, and his successors; Laureen E. Borden, individually and in her official capacity as the Auditor-Treasurer for Crow Wing County, Minnesota, and her successors; Donald F. Ryan, individually and in his official capacity as County Attorney for Crow Wing, Minnesota, and his successors; Dennis J. Freed, individually and in his official capacity as the Auditor for Chisago County, Minnesota, and his successors; Janet Reiter, individually and in her official capacity as County Attorney for Chisago County, Minnesota, and her successors

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2013
Filed: August 2, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Plaintiffs, who are persons eligible to vote in Minnesota or organizations representing such persons (collectively, Voters), brought this suit against various Minnesota state and county officials responsible for election administration or enforcement of election laws (collectively, Officials) challenging the process by which Officials confirm the eligibility of voters who register on election day (election day registrants or EDRs). They also challenge a provision of the Minnesota Constitution denying the right of persons under guardianship to vote, as well as the sufficiency of notice afforded to such persons under certain Minnesota statutes. They appeal from the district court's[1] order dismissing their claims and denying their motion for summary judgment as moot. We affirm.

## I.  Background

Under Minnesota law, an individual may register to vote: (1) "at any time before the 20th day preceding any election"; (2) "on the day of an election"; or (3) "when submitting an absentee ballot, by enclosing a completed registration application[.]" Minn. Stat. § 201.054, subdiv. 1(1)-(3). To register before election day, an individual must submit a completed voter registration application (VRA) to his or her county auditor or the Minnesota Secretary of State at least twenty days before election day. Id. § 201.061, subdiv. 1. In the VRA, the individual provides personal information and certifies under penalty of perjury that he or she is eligible to vote. Id. § 201.071, subdiv. 1. To register on election day, an individual must

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

(1) appear in person on election day at the polling place for his or her residence, (2) complete a VRA, (3) make an oath in the form prescribed by the Minnesota Secretary of State, and (4) provide proof of residence.  Id. § 201.061, subdiv. 3.

Intentionally registering or attempting to register to vote when ineligible constitutes a felony.  Id. § 201.054, subdiv. 2.  Minnesota law establishes procedures for challenging a voter's eligibility on election day.  See id. § 204C.07, subdiv. 1 & 2 (certified voters as challengers of voter eligibility at polling places); id. § 204C.12, subdiv. 1 (election judges, authorized challengers, and any voter as challengers of voter eligibility); id. § 204C.12, subdiv. 3 (challenged voter who is determined ineligible is not permitted to vote).

Voters brought suit against Officials, raising claims under 42 U.S.C. § 1983. They alleged that their First, Fifth, Ninth, and Fourteenth Amendment rights were and will be violated by Officials' failure to verify EDRs' voting eligibility before allowing EDRs to vote, after which time any improperly cast votes cannot be "clawed back" or otherwise rescinded.  They alleged that Officials verify early registrants' voting eligibility before allowing them to vote and that the same measures should be applied to EDRs.  They also alleged that the Minnesota Constitution's categorical denial of voting rights to persons under guardianship violates their rights under the United States Constitution and the Minnesota Constitution, notwithstanding certain Minnesota statutes protecting such voting rights.  They further alleged that these Minnesota statutes fail to afford sufficient notice and opportunity to be heard regarding determinations of the voting rights of persons under guardianship.  The district court granted Officials' motion to dismiss and denied Voters' motion for summary judgment as moot, concluding that Voters had failed to state a claim, failed to exhaust their state law remedies, and lacked standing.

## II. Discussion

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6), construing all reasonable inferences in favor of the nonmoving party." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012).

### A. EDRs' Voting Eligibility

"The law governing the invocation of [§] 1983 for alleged 'malfunctions' of the electoral process is well settled." Bodine v. Elkhart Cnty. Election Bd., 788 F.2d 1270, 1271 (7th Cir. 1986). "The Constitution is not an election fraud statute: protection is extended to the right of all qualified citizens to vote in state and federal elections, and to the right to have votes counted without dilution as compared to the votes of others." Id. (internal citation omitted). "It is not every election irregularity, however, which will give rise to a constitutional claim and an action under [§] 1983." Hennings v. Grafton, 523 F.2d 861, 864 (7th Cir. 1975). "[S]ection 1983 is implicated only when there is 'willful conduct which undermines the organic processes by which candidates are elected.'" Bodine, 788 F.2d at 1272 (emphasis omitted) (quoting Hennings, 523 F.2d at 864); see also Hennings, 523 F.2d at 864 (explaining that "irregularities caused by mechanical or human error and lacking in invidious or fraudulent intent" do not warrant relief under § 1983).

In concluding that Voters had failed to state a claim concerning Officials' verification of EDRs' voting eligibility, the district court relied on our decision in Pettengill v. Putnam County R-1 School District, 472 F.2d 121 (8th Cir. 1973) (per curiam). In Pettengill, property owners and county residents brought a § 1983 action seeking to set aside a school bond election held by the school district on the basis that certain voters did not meet residency requirements or were not of lawful age and because irregularities existed in applications for absentee ballots. Id. at 121-22. The

-4-

owners and residents argued that the school district had "diluted [their] legal votes by counting illegally cast votes and that such (state) action amount[ed] to a deprivation of [their] civil rights." Id. at 122 (parenthetical in original). We held that dismissal was proper because a federal court cannot "be the arbiter of disputes over whether particular persons were or were not entitled to vote or over alleged irregularities in the transmission and handling of absentee voter ballots." Id. We explained:

> In essence, the [owners and residents'] complaint asks the federal court to oversee the administrative details of a local election. We find no constitutional basis for doing so in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race, or fraudulent interference with a free election by stuffing of the ballot box, or other unlawful conduct which interferes with the individual's right to vote. No similar circumstance is alleged in the complaint in this case.

Id. (internal citations omitted).

In so holding, we adopted the rationale of Powell v. Power, 436 F.2d 84 (2d Cir. 1970). In Powell, voters alleged that state election officials erroneously permitted non-eligible individuals to vote in a congressional primary election. Id. at 85-86. In affirming the denial of relief, the Second Circuit explained that the voters' § 1983 claim failed for want of "intentional or purposeful discrimination" on the part of election officials. Id. at 88. The court explained: "Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." Id. at 86; see also Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir. 1980) ("If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy

and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a [§] 1983 gloss.").

Voters argue that their claims differ from those in Pettengill because in this case, "the State exceeded its constitutional limitations of power, by design, to intentionally infringe upon the constitutional rights of entitled voters at any election." We find this purported distinction unpersuasive. At their base, Voters' claims are premised on potential harm in the form of vote dilution caused by insufficient pre-election verification of EDRs' voting eligibility and the absence of post-election ballot rescission procedures. Voters raised no allegations of the "aggravating factors" identified in Pettengill; they alleged no discriminatory or other intentional, unlawful misconduct by Officials sufficient to implicate § 1983. Nor did they allege defects causing Minnesota's voting system to be so "fundamentally unfair" that relief under § 1983 may be appropriate. "A canvass of substantive due process cases related to voting rights reveals that voters can challenge a state election procedure in federal court only in limited circumstances, such as when the complained of conduct discriminates against a discrete group of voters, when election officials refuse to hold an election though required by state law, resulting in a complete disenfranchisement, or when the willful and illegal conduct of election officials results in fraudulently obtained or fundamentally unfair voting results." Nolles v. State Comm. for Reorganization of Sch. Dists., 524 F.3d 892, 898-99 (8th Cir. 2008) (internal citations omitted). Accordingly, Voters cannot prevail on their § 1983 claims based on Officials' failure to verify EDRs' voting eligibility before allowing EDRs to cast their votes.

B. Wards' Voting Rights

The Minnesota Constitution provides that "a person under guardianship" is ineligible to vote. Minn. Const. art. VII, § 1. Minnesota statutes, however, provide that "unless otherwise ordered by the court, the ward retains the right to vote." Minn.

Stat. § 524.5-313(c)(8); see also id. § 201.014, subdiv. 2(b) (revoking the right to vote of any individual "under a guardianship in which the court order revokes the ward's right to vote"); id. § 524.5-120(14) (stating that wards retain "all rights not restricted by court order[,]" including the right to vote).  As recounted above, Voters challenge the constitutionality of the Minnesota Constitution's categorical ban on voting rights for persons under guardianship.  They also challenge the adequacy of notice afforded by Minnesota's statutory procedures for adjudicating wards' voting rights.

Voters lack standing to raise these claims.  As the district court correctly explained, "The Amended Complaint fails to allege that any Plaintiff has been denied the right to vote by any constitutional provision barring persons under guardianship from voting." D. Ct. Order of Aug. 17, 2012, at 14.  Indeed, the only party under guardianship in this case, James Stene, retains his right to vote.  See Appellants' App. 40.  Voters did not allege that Officials will deny their or any of their members' voting rights based on this constitutional provision.  Nor did Voters allege in their amended complaint that they have been or will be injured by the allegedly deficient statutory notice provisions.  See Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. Nat'l Collegiate Athletic Ass'n, 715 F.3d 1089, 1091-92 (8th Cir. 2013) ("'[T]he irreducible constitutional minimum of standing' requires that 'the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" (alteration in original) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); see also Nolles, 524 F.3d at 898 ("Federal courts lack the authority to review legislative acts merely because they are allegedly unconstitutional.  Rather, the courts are limited to considering the constitutionality of a legislative act only when it is said to result in or threaten a direct injury to the party challenging the act.").

## III.  Conclusion

The judgment is affirmed.

_____