NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 55

No. 2015-317

| | |
|---|---|
| Kurt Daims & Craig Newbert | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| Town of Brattleboro | March Term, 2016 |

John P. Wesley, J.

Paul S. Gillies of Tarrant, Gillies & Richardson, Montpelier, for Plaintiffs-Appellants.

Robert M. Fisher and Michael McGillion (On the Brief) of Fisher & Fisher Law Offices, P.C., Brattleboro, for Defendant-Appellee.


PRESENT:  Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Kupersmith, Supr. J. (Ret.), Specially Assigned


¶ 1.  **EATON, J.**  Plaintiffs, residents of defendant Town of Brattleboro, appeal the superior court's order granting the Town summary judgment with respect to plaintiffs' lawsuit claiming that the town selectboard unlawfully interfered with an election on their petitions to amend the town charter.  We affirm.

¶ 2.  Prior to the March 3, 2015 town meeting, plaintiffs submitted three separate petitions to amend the town charter, pursuant to 17 V.S.A. § 2645.  Among other things, the petitions sought to: (1) allow residents sixteen and older to vote at town meetings; (2) allow voters to seek a referendum on articles authorizing the Town to spend more than $2 million;

(3) limit the terms of town meeting representatives;[1] (4) hold the elections of town representatives and town officials in November rather than March; (5) require employers within the Town to provide two hours paid leave for employees to vote at town meetings; and (6) have the town grand juror enforce the minimum wage and function as a district attorney for the Town. As required by § 2645(a)(3) and (5), the selectboard held two public hearings on the petitions.

¶ 3.     On February 17, 2015, following a second hearing that was held on January 29, 2015, the selectboard met and resolved to endorse an "information sheet" regarding the petitions and to distribute the information sheet to media outlets in the Brattleboro area. The information sheet was then emailed to town meeting representatives, the media, selectboard members, town staff, and a few other persons who requested it. Among other things, the information sheet stated that: (1) setting term limits would be "anti-democratic" in that it would "ban Brattleboro residents from [t]own meeting[s] because they had attended six years in a row"; (2) moving elections from March to November "would damage the link between . . . important parts of government and leave Brattleboro out of step with the rest of Vermont"; (3) requiring employers to provide paid leave for employees to attend town meetings "would mandate Brattleboro employers to pay employees to attend town meetings in other towns and states" and would impact "Brattleboro residents [who] already face very steep property taxes"; (4) giving powers to the town grand juror, which "is essentially obsolete in this modern era," is unnecessary "because enforcement of laws and ordinances is handled by other elected officials and clear structures"; and (5) "setting separate rules for voter review of budget items over $2 million is confusing and arbitrary." On March 3, 2015, town voters defeated the three petitions.

¶ 4.     Shortly after the election, plaintiffs, acting pro se, filed a complaint alleging that the selectboard had interfered with the constitutional mandate that elections be free and without

---

[1] As stated in the town charter, the Representative Town Meeting consists of up to 140 elected voters and "is a guiding body for the Town and a source of ideas, proposals, and comments." 24 V.S.A. App. Ch. 107, § 2.4(a)(2).

2

corruption, in violation of Chapter I, Article 8 and Chapter II, Section 55 of the Vermont Constitution, and also had interfered with the division of powers established in the town charter. The complaint asked the superior court to nullify the vote on the petitions, order a new election, rule that the selectboard acted beyond its authority in violation of the town charter in promulgating the information sheet, find that the information sheet was partisan and erroneous, and instruct town officials to refrain from issuing any future statements opposing petitioned articles.

¶ 5. The Town filed a motion for summary judgment, along with a statement of undisputed material facts. Plaintiffs accepted the Town's statement of undisputed facts and filed a cross-motion for summary judgment, arguing that the Town's information sheet was unauthorized and inconsistent with the purpose and letter of § 2645. In a July 28, 2015 decision, the superior court granted the Town's motion for summary judgment, ruling that: (1) nothing in § 2645 or any other law prevented the selectboard from issuing an information sheet concerning the voter-initiated petitions to amend the town charter; (2) although the information sheet expressed the selectboard's opinion on the petitions, it did not rise to the level of the selectboard interposing itself in the election process and interfering with the voters' right to decide the issues presented by the petitions; (3) plaintiffs provided no support for their contention that the selectboard revised the proposed amendments to the town charter; (4) plaintiffs failed to demonstrate that the information sheet was erroneous; and (5) even if the information sheet contained errors, there was nothing to suggest that the selectboard acted willfully to deceive voters.

¶ 6. On appeal, plaintiffs, now represented by counsel, do not claim any constitutional violations, but rather argue only that the information sheet disseminated by the selectboard was unauthorized by, and inconsistent with the purpose and letter of, § 2645. Under § 2645(a), a municipality may propose to the Legislature an amendment to its charter by majority vote of

3

town voters based on either a proposal put forth by the municipal legislative body itself or by a petition of five percent of the municipality's voters. The legislative body must hold at least two public hearings before a vote on proposed charter amendments, the first of which must be held at least thirty days before the vote. 17 V.S.A. § 2645(3). The legislative body may revise its own proposals following comments at the public hearings, but may not revise voter-initiated petitions. Id. § 2645(4)-(5).

¶ 7.     According to plaintiffs, the Legislature intended § 2645 to mean that once a voter-initiated petition is submitted to the selectboard, the selectboard is authorized to do only what it is required to do under the statute—provide notice, hold hearings, add articles to the warning, order an election, and refrain from altering the petition in any way. Plaintiffs rely on § 2645(5), which requires, with respect to voter-initiated petitions, that the municipal legislative body hold a second public hearing no later than ten days after the first hearing, and that voter-initiated petitions be submitted to the voters at the next election "in the form in which they were filed." Id. § 2645(5) ("The legislative body shall not have the authority to revise proposals to amend the charter made by petition."). In plaintiffs' view, these obligations reflect the commitment of the Legislature to protect petitions from interference by the municipal legislative body even when the legislative body finds them unacceptable. In essence, plaintiffs argue that any action taken by the selectboard beyond that set forth in the statute with respect to a voter-initiated petition to amend the charter—including taking a position on the petition—is beyond the selectboard's authority.

¶ 8.     Plaintiffs read too much into the statute. As indicated above, § 2645 sets forth procedural requirements with respect to proposals to amend town charters put forth by either municipal legislative bodies or five percent of town voters. Nothing in the statute presumes to resolve the "tension" between town voters and town elected officials by precluding the selectboard from commenting on voter-initiated petitions to amend town charters.

4

¶ 9. Plaintiffs argue, however, that because municipalities have only those powers explicitly granted by the Legislature, the selectboard is authorized to do only what the statute obligates it to do and thus cannot comment on voter-initiated petitions absent explicit authorization to do so in § 2645 or the town charter. In so arguing, plaintiffs cite the longstanding legal principle, known as Dillon's Rule, that municipalities " 'owe their origin to, and derive their powers and rights wholly from, the legislature.' " City of Montpelier v. Barnett, 2012 VT 32, ¶ 20, 191 Vt. 441, 49 A.3d 120 (quoting City of Clinton v. Cedar Rapids & Mo. River R.R. Co., 24 Iowa 455, 475 (1868)); see also E.B. & A.C. Whiting Co. v. City of Burlington, 106 Vt. 446, 461, 175 A. 35, 42-43 (1934) ("The general rule is that the charter of a municipal corporation is to be strictly construed against it; the presumption being that the Legislature granted in clear and unmistakable terms all that it intended to grant.").

¶ 10. Fleshed out, however, the principle stands for the broader proposition that municipalities' powers "include both those powers granted in express words by statute and those powers necessarily or fairly implied in the powers expressly granted." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 13, 187 Vt. 7, 989 A.2d 491; see also Barnett, 2012 VT 32, ¶ 20 (stating that under Dillon's Rule municipalities have, in addition to powers expressly granted to them, powers "as may be incident, subordinate or necessary to the exercise" of their express powers (quoting Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, 486, 380 A.2d 64, 66 (1977))); Bryant v. Town of Essex, 152 Vt. 29, 36-37, 564 A.2d 1052, 1056 (1989) ("Municipalities possess and may exercise not only those powers expressly granted to them by the Legislature, but also such powers as are necessarily and fairly implied or are incident to the powers expressly granted, and such as are essential to the declared objects and purposes of the [municipal] corporation" (quotation omitted)).

¶ 11. We conclude that, while there is no explicit authority under the statute to allow municipal bodies to comment on voter-initiated petitions, such authority, within limitations, is

5

fairly and reasonably implied under the statute and the town charter. As noted, § 2645(a)(1) allows proposed amendments to town charters not only by voter-initiated petitions but also by proposals from the legislative body of the municipality. Thus, the statute presumes an active role in charter amendments by the municipal legislative body.[2] Although § 2645(a)(5) explicitly prohibits the legislative body from revising voter-initiated petitions, the statute does not prohibit the legislative body from commenting on such petitions. Indeed, plaintiffs concede that municipal bodies can comment on their own proposals, even though there is no explicit legislative authority in the statute for them to do so. Apparently, they justify this inconsistent position based on their belief that the purpose of § 2645 is to balance power between municipal bodies and voters. We find no basis in the statute to conclude that municipal bodies may comment on their own proposals to amend a town charter, but not on voter-initiated petitions to do the same.

¶ 12. Like the subject statute, the town charter neither expressly gives the selectboard the authority to comment on voter-initiated petitions, see 24 V.S.A. App. Ch. 107, § 4.6 (setting forth general powers of selectboard), nor expressly prohibits such action, see id. § 4.3(a) (setting forth prohibitions for selectboard members, including that they not be employed by town or be voting members on committee whose members are appointed by selectboard, or that they hold any paid appointive office in town until one year after their term ends). The town charter provides, however, that the Town shall have all powers conferred by the laws of the state and that the charter "shall not be construed as limiting the general powers of the Town." Id. § 3.1(a). Moreover, the charter states that the selectboard "shall have the general oversight of the affairs . . . of the Town not committed by law to the care of any particular officer." Id. § 4.6; see

---

[2] Moreover, the town charter also allows proposed amendments to the charter by recommendation of a Charter Revision Committee appointed by the selectboard. 24 V.S.A. App. Ch. 107, § 8.1(4).

6

also 24 V.S.A. § 872(a) (stating that "selectboard shall have the general supervision of the affairs of the town").

¶ 13.    In short, it can be fairly and reasonably inferred from § 2645 and the town charter that the selectboard may comment in good faith on proposed charter amendments, even if voter-initiated, concerning town operations or functions.[3]  In this case, the subject petitions concerned government functions and operations and thus were subject to good faith comment by the selectboard.

¶ 14.    This position is consistent with recent case law exploring the extent to which local governmental bodies may comment on ballot measures.  For example, the Court of Appeals of Maryland recently considered whether a county could take a public position on a law limiting collective bargaining that was placed on the ballot through a voter-initiated referendum.  See Fraternal Order of Police v. Montgomery Cty., 132 A.3d 311 (Md. 2016).  Notwithstanding the petitioners' contention that there was no explicit statutory authorization for the county to take a position on the ballot measure, the court held that the county could express its views in the context of supporting or opposing ballot measures related to legitimate government operations.[4]  Id. at 326-28; cf. Young v. Red Clay Consol. Sch. Dist., 122 A.3d 784, 852 (Del. Ch. 2015) (concluding that "limited advocacy principle" set forth in earlier case law would allow school

---

[3]  We note that several states, in the context of statutory election laws, have limited government comment on—or barred or limited the expenditure of public funds to support or oppose—voter-initiated ballot measures.  See, e.g., Ariz. Rev. Stat. § 9-500.14 (2015); Cal. Gov. Code § 54964 (2001); Colo. Rev. Stat. § 1-45-117 (2015); Conn. Gen. Stat. § 9-369b (2015); Fla. Stat. § 106.113 (2009); Okla. Stat. § 16-119 (1975); Wash. Rev. Code § 42.52.180 (2012).  Plaintiffs in this case do not rely on the expenditure of public funds to support their argument, and we do not address whether Vermont law precludes or limits the expenditure of public funds to support or oppose voter-initiated ballot measures.

[4]  The court cautioned that it was not dealing with an attempt by the county to use public funds or resources to support or oppose any partisan political cause, such as the election of a particular candidate for office, or ballot measures involving social policies unrelated to government operations in any material way.  Fraternal Order of Police, 132 A.3d at 329 (stating that that kind of advocacy "is not a proper function of government and not within the permissible ambit of government speech").  Neither does the instant case raise such concerns.

7

district to engage in government campaign speech such as posting material on district website and in school newspaper, holding public meetings and workshops, and making statements to media).

¶ 15.    Similarly, the Sixth Circuit of the United States Court of Appeals concluded that although elections raise unique constitutional concerns regarding the government's power to advocate "because they are the very foundation of a democratic system," such concerns do not preclude the government from speaking "within the scope of its governance functions." Kidwell v. City of Union, 462 F.3d 620, 625 (6th Cir. 2006).  The court determined that the defendant city could comment in opposition to citizen initiatives concerning emergency services and taxes because the initiatives fit "squarely within [the city's] competence as governor" and involved issues "germane to the mechanics of its function." Id. at 626.  The court pointed out that limiting government speech with respect to ballot measures concerning government operations "would allow hecklers to silence the government on issues in which it has an interest and expertise—and on which citizens have an interest in hearing their government's perspective." Id.; see also Page v. Lexington Cty. Sch. Dist. One, 531 F.3d 275, 287 (4th Cir. 2008) (accord); City Affairs Committee of Jersey City v. Bd. of Comm'rs of Jersey City, 41 A.2d 798, 800 (N.J. 1945) "[M]unicipalities may, within their discretion and in good faith, present their views for or against proposed legislation or referendum to the people of questions which in their judgment would adversely affect the interests of their residents."). We agree with this reasoning.

¶ 16.    In any event, even if we were to determine that in this case the selectboard overstepped its authority in resolving to oppose the voter-initiated petitions, its conduct did not rise to the level that would compel this Court to order the extraordinary remedy of a reelection. Plaintiffs have accepted the Town's undisputed facts that no changes were made to the three petitions and that the selectboard's information sheet was not posted in either the municipal center or the town clerk's office, where voting occurred.  Nor do plaintiffs challenge the Town's

assertion, based on the affidavit of the town clerk, that the information sheet was neither handed out with the ballot nor distributed at the polling place. Cf. Conn v. Middlebury Union High Sch. Dist. No. 3, 162 Vt. 498, 505, 648 A.2d 1385, 1389 (1994) (rejecting plaintiffs' contention that school board's letter urging voters to pass school bond violated statute forbidding inclusion of opinion or comment on warning, notice, information cards or ballot, noting that "there was no opinion or comment on any of the official documents listed in" statute). In fact, plaintiffs have not even asserted that the information sheet actually swayed any voter's decision on the petitions.

¶ 17. As we held in Putter v. Montpelier Public School System, 166 Vt. 463, 467-68, 697 A.2d 354, 357 (1997), ordering a reelection is an extraordinary remedy that is available only in extreme circumstances in which the right to vote was affected. In Putter, the plaintiff sought to invalidate the passage of a school bond based on the school board's distribution of a newsletter urging passage of the bond proposal. As in this appeal, the plaintiff generally claimed that the distribution of the newsletter improperly influenced the election without referencing an impact on any voter in particular. In affirming the dismissal of the plaintiff's lawsuit, we stated that "[i]nvalidation of an election requires more than merely a claim of election irregularity, even one of constitutional dimensions." Id. at 467, 697 A.2d at 357. We held that "so extraordinary and destabilizing a remedy" is available only when warranted by factors weighing "the nature and severity of the . . . violation, the probability that it actually affected the election result, the presence or absence of culpable intent, and the harm to the organic processes of the election." Id. at 468, 697 A.2d at 357.

¶ 18. We concluded that the plaintiff's claims in that case fell "well below the requisite threshold for election invalidation," insofar as the plaintiff asserted in broad terms only that the school board had improperly influenced the election, without alleging "that any qualified voters were denied their right to vote in the school bond election, or that their votes were improperly

9

diluted through deliberate governmental contrivance," or that "municipal voters were actually 'influenced' in sufficient numbers to alter the election result." Id. at 468-69, 697 A.2d at 357-58. We held that the plaintiff's claims did not "even remotely approach the level of extremity, culpability or undue influence on the electoral process necessary to warrant the extraordinary remedy of election invalidation." Id. at 470, 697 A.2d at 359.

¶ 19.    The same is true here, and plaintiffs' attempts to distinguish Putter are unavailing. Like the newsletter in Putter, the selectboard's information sheet in this case urged voters to take a certain position on plaintiffs' petitions.  As in Putter, plaintiffs' claim of improper influence rests upon the dissemination of written material that was not distributed at the polling place. Moreover, as in Putter, there is no claim of a direct impact on the right to vote.  In short, plaintiffs fail to assert a legal basis to distinguish Putter, which is controlling here as to the unavailability of the remedy they seek.

Affirmed.

FOR THE COURT:

_____
Associate Justice

10