VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street, PO Box 187
Burlington VT  05402
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 21-CV-00550



| Benjamin Luna v. City of Burlington |
| --- |

# DECISION ON MOTION TO DISMISS

Pursuant to 17 V.S.A. § 2603, Plaintiff challenges the validity of three articles passed in the City of Burlington's March 2, 2021 election. He alleges that the City's published election documents with respect to these articles "were not only confusing but violated Vermont law." By way of final relief, he asks that the court invalidate the election and "[i]ssue an affirmative injunction ordering the [City] to restructure and streamline its voting procedures." Compl., Prayer for Relief, ¶¶ 7 & 9. He nowhere alleges, however, that these defects affected the outcome in any way. Thus, the law requires that the court dismiss the Complaint.

The court begins by observing that the Complaint falls well short of the requirement of "a short and plain statement of the claim." V.R.C.P. 8(a)(1). Instead, Plaintiff submitted a brief, laced with argument, making it difficult to parse out factual assertion from rhetorical flourish. Conspicuously absent, however, is any suggestion that any of Plaintiff's myriad suggested shortcomings actually affected the result of the election.

This omission is fatal. While Plaintiff argues that he "is unaware of any law in the United States that sets an oppressive standard such that a complainant must demonstrate 'there were errors sufficient to change the ultimate result' of an election to challenge results," Opp. to Mot. to Dismiss, 2, the very first paragraph his own Complaint quotes that very law. Compl., 1 (citing 17 V.S.A. § 2603). The statute makes abundantly clear that anyone contesting an election must allege either "errors" or "fraud" "sufficient to change the ultimate result" or "that for any other reason the result of the election is not valid." 17 V.S.A. § 2603(b). One who accuses another of "Trumpian strategy," Opp. to Mot. to Dismiss, 1, would do well to pay closer attention to the law he cites, lest he also be accused of employing a "fake news" approach to the law.

On the issue of election invalidation, the seminal case is *Putter v. Montpelier Public School System*. In *Putter*, a taxpayer brought an action seeking to invalidate an election based upon the Board

of School Commissioners' use of public funds to print and distribute a newsletter supporting the Board's budget and school bond proposal. 166 Vt. 463, 464–65 (1997). While the *Putter* plaintiff sued under 42 U.S.C. § 1983, the Court's holdings on election challenges have broad applicability beyond that discrete context. At the outset, the Court set a high bar for election invalidation, stating that "[i]nvalidation of an election requires more than merely a claim of election irregularity, even one of constitutional dimensions." *Id.* at 467. The Court went on to describe the reasoning supporting the "high threshold" for invoking "the extraordinary equitable remedy of election invalidation":

> Voiding an election and ordering a new one represents one of the more extreme remedial measures available to a court sitting in equity. Nothing is so profoundly destabilizing to the local political process; budgets or projects debated during the campaign and approved by the electorate must invariably be delayed or postponed, and lame-duck incumbents may be unable as a practical matter to conduct the public business for which they were elected.

*Id.* As a result, the new-election remedy is extraordinary, and seldom granted.

In denying the plaintiff's request to invalidate the city's annual election, the *Putter* Court provided examples of cases that warranted the " '[d]rastic, if not staggering' equitable remedy of election invalidation." *Id.* at 468 (quoting *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1997)). These included cases of "[d]ilution of votes through malapportioned districts; purposeful or systematic discrimination against voters of a certain class; pervasive election fraud; and 'other willful conduct which undermines the organic processes by which candidates are elected.' " *Id.* (citations omitted) (quoting *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)). Cases that did not warrant the new-election remedy included elections "where the governmental misconduct, considered in the light of all the circumstances, did not warrant so extraordinary and destabilizing a remedy." *Id.* The Court went on to describe the factors those courts considered, "including the nature and severity of the federal violation, the probability that it actually affected the election result, the presence or absence of culpable intent, and the harm to the organic processes of the election." *Id.*

In *Putter*, the plaintiff only broadly asserted harm: that the defendant " 'improperly influenced' the election by disseminating 'partisan' pamphlets to the electorate." *Id.* Here, similarly, Plaintiff suggests that the City's warning was "misleading," Compl., 4, and "inconspicuous," *id.* at 5–6, creating "a cluster of confusion," *id.* at 6–8. Nowhere, however, does Plaintiff allege that a less misleading or more conspicuous warning would have changed a single vote, much less that it would have changed the outcome of the election. *Cf. Putter*, 166 Vt. at 468–69 ("He does not allege that any electors actually changed their votes as a consequence of reading the disputed materials, or that municipal voters were actually 'influenced' in sufficient numbers to alter the election result.").

Moreover, Plaintiff has failed to allege culpable intent. As the *Putter* Court noted, "courts have occasionally invoked the new-election remedy as a punitive measure 'to wipe out any fruits of indefensibly illegal conduct'; conversely, the absence of willful misconduct has been a prime consideration in rejecting the invalidation remedy." *Id.* at 470 (quoting K. Starr, *Federal Judicial Invalidation as a Remedy for Irregularities in State Elections*, 49 N.Y.U. L. Rev. 1092, 1119 (1974)). While Plaintiff alleges statutory violations, he does not allege that any City actor acted deliberately or with the intent improperly to influence the outcome of the election. His claims therefore do not reach the "level of extremity, culpability or undue influence on the electoral process necessary to warrant the extraordinary remedy of election invalidation." *Id.*

In cases since *Putter*, the Court has upheld its teachings. *E.g.*, *Daims v. Town of Brattleboro*, 2016 VT 55, 202 Vt. 276 (declining to invalidate election after municipality issued an information sheet urging voters to take a certain position on plaintiffs' petitions); *Bingham v. Town of Middlebury*, No. 2014-478 (Vt. May 14, 2015) (unpublished mem.), available at 2015 WL 2384028 (affirming trial court's decision not to invalidate election after plaintiff alleged his submitted initiative was not included on the ballot and that the Town spent money promoting its own ballot initiatives). Plaintiff has not offered a compelling reason to avoid this precedent. Thus, he is not entitled to invalidate the election.

The court notes that Plaintiff seeks more than invalidation of the election as to the challenged articles; he asks also for an affirmative injunction requiring that the City reform the way it conducts elections. Compl., Prayer for Relief, ¶ 9. It is at best questionable whether 17 V.S.A. § 2603 authorizes such relief; it seems more likely that another vehicle would be better suited to that purpose. Nevertheless, this is the vehicle Plaintiff has chosen; thus, he must meet its pleading requirements. The statute itself and related precedent make clear that this requires, at a minimum, some allegation that the irregularities of which he claims had sufficient impact as to make the result invalid. In this regard, the Complaint is completely lacking. Accordingly, the Complaint fails to state a claim.


Samuel Hoar, Jr.
Superior Court Judge