**Austin ANDERSON and Katherine Stevens v. STATE of Vermont**

[723 A.2d 1147]

No. 98-047

December 22, 1998. Plaintiffs Austin

Anderson and Katherine Stevens, both students at the Stowe Elementary School, seek declaratory and injunctive relief concerning the constitutionality of a part of the Equal Education Opportunity Act, 1997, No. 60 ("Act 60").[1] The plaintiffs contend that the system of public school funding created by Act 60 for amounts above the general state support grant violates the state constitution for the same reasons we voided the state's previous public education funding formula in *Brigham v. State*, 166 Vt. 246, 692 A.2d 384 (1997). We do not reach the merits of this assertion. Rather, because plaintiffs have not presented an actual or justiciable controversy, we vacate the judgment of the superior court.

The trial court decided the case on cross-motions for summary judgment, resolving the case in favor of defendant State of Vermont after rejecting its position concerning nonjusticiability. Viewing the record in the light most favorable to plaintiffs as the parties against whom summary judgment was entered, see *Samplid Enters., Inc. v. First Vermont Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996), reveals the following.

As of the 1997-98 school year, which antedates Act 60, the Stowe School District was spending approximately $8,846 per student, compared to a statewide average of $6,447. In fiscal year 1997, taxpayers in Stowe were subject to an effective local property tax at a rate of approximately 70 cents per $100 of grand list value, compared to the statewide average of $1.33. A combination of above-average per-pupil spending and a below-average tax rate prior to Act 60 is indicative of a district with relatively high

property values in relation to the number of students to be educated.

A stated objective of Act 60 is "to make educational opportunity available to each pupil in each town on substantially equal terms" in accordance with *Brigham*. 16 V.S.A. § 4000(a). According to the Legislature's statement of purpose, "[s]ubstantially equal access to similar revenues per pupil will be provided by a combination of state block grants and local education spending. This local education spending will be substantially equalized so that each school district will have substantially equal capacity to raise and provide the same amount per pupil on the local tax base." *Id.* § 4000(b).

The first equalization mechanism in Act 60 is a statewide property tax of $1.10 per $100 of grand list value, see 32 V.S.A. § 5402(a), which funds a "general state support grant" determined on a per-student basis, 16 V.S.A. § 4011. In fiscal year 1999, the amount of the general state support grant is $5,000 per student, adjusted for inflation since fiscal year 1997. See Act 60, § 24(a). Plaintiffs do not challenge this part of Act 60, except to argue that it should be the only equalization method.

The second equalization mechanism authorizes school districts to raise from property taxes and spend funds above the general state support grant, based on a local vote, but subject to an equalization of yield so that any specified property tax rate will produce the same funds per student in every district. See 16 V.S.A. §§ 428, 511, 4025-4028. In order to equalize yields, there must be differences by district in the extent to which funds above the basic grant are derived from property taxes in the district. In property-wealthy districts, some of the funds raised from locally-voted educational property taxes are redistributed to property-poor districts to equalize the yield. See *id.* § 4027. In property-poor districts, some of the

---

[1] Plaintiff Anderson appears by and through his father and guardian, Matt A. Anderson; plaintiff Stevens appears by and through her mother and guardian, Carol Stevens.

funds available come from property taxes levied in property-rich districts, again to equalize the yield.[2] See *id.*

Because the Stowe school district is property-wealthy, some of the funds raised by taxes imposed on Stowe property to support spending above the basic grant will be redistributed to property-poor districts. It is this part of Act 60 that plaintiffs challenge as unconstitutional. They assert that the Stowe voters would have to approve a tax rate of approximately $1.88 per $100 of grand list value, over 250% of the fiscal year 1997 rate, in order to maintain 1997 spending levels. They claim that the voters will not approve spending beyond the level of the state support grant because of the high tax rate required and the knowledge that part of the tax revenues will go to other school districts. Plaintiffs contend that, as a result, they are deprived of "their constitutional right to equal educational opportunities and equal educational funding opportunities." As evidence of this effect, the plaintiffs note that on August 11, 1997 the voters rejected a one-time 20-cent local property tax to fund what members of the Stowe School Board described as "an educational foundation to help support the Stowe School District fund above the [general state support] grant amount."

The State responds that the plaintiffs' claim of inability to obtain equal educational opportunity is, at best, premature and speculative. We agree. Act 60 contains certain transition provisions applicable to the 1999 and 2000 fiscal years. Pursuant to one provision, the statewide property tax applicable to the Stowe School District will be approximately $1.00 for fiscal year 1999 (as opposed to the $1.10 figure that will ultimately be applicable). See Act 60, § 50. Pursuant to another, the district will keep an estimated 73% of the funds derived from its locally-voted property tax, not the 30% it argues would be kept without the transition provision. See *id.* § 24(b)(1). Stowe can raise significant extra money by use of the optional sales and use, meals and alcoholic beverages, or rooms taxes. See 24 V.S.A. § 138(b). Further, the district will receive an additional amount of categorical aid, estimated by the State to be about $750 per pupil. Particularly because of the transition provisions, plaintiffs' counsel admitted at oral argument that they were not concerned about educational funding for fiscal 1999.

The claim is speculative in another respect. The equalized yield policy means that every property tax voter in the state faces the same tax rate consequences of raising per pupil spending by the same amount. Plaintiffs argue that, despite the equal rate effect, Stowe voters will not approve extra funds, while voters in other communities will do so, because of the perceived unfairness of sending "their" property tax proceeds to other districts and raising historically low property tax rates. This is a debatable prediction of voter behavior, not a fact we can recognize.

"The purpose of a declaratory judgment is to provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy." *Doria v. University of Vermont*, 156 Vt. 114, 117, 589 A.2d 317, 318 (1991) (citation and internal quotation marks omitted). "The 'actual controversy' requirement is jurisdictional, and may not be waived by either the parties or the tribunal." *Town of Cavendish v. Vermont Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982).

---

[2] For purposes of the equalization of yield calculation, property wealth is a relative concept depending upon which districts are spending above the basic support grant. If no property-wealthy district, in absolute terms, spends above the basic support grant, equalization will occur between property-poor districts.

In the absence of an actual controversy, any decision of the court would be "merely an advisory opinion" and thus beyond the authority vested in the judicial branch by the constitution. See *Massachusetts Mun. Wholesale Elec. Co. v. State*, 161 Vt. 346, 363, 639 A.2d 995, 1006 (1994). The requirement of an actual or justiciable controversy means that the consequences of the dispute "must be so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected." *Id.* (citation omitted). The concept, which we first expressed in *Village of Bennington v. Hawks*, 100 Vt. 37, 134 A. 638 (1926), requires us to distinguish the "probable" from that which is merely "possible." See *id.* at 40, 134 A. at 639.

In *Brigham*, we held that students had a right to equal educational opportunity that was violated by the then-existing system allowing districts to assess property taxes locally and spend what they raised. See 166 Vt. at 268, 692 A.2d at 397. We explained, however, that "*absolute* equality of funding is neither a necessary nor a practical requirement" and that equal educational opportunity does not prohibit "cities and towns from spending more on education if they choose" but "does not allow a system in which educational opportunity is necessarily a function of district wealth." *Id.* Taking at face value plaintiffs' contention that this case is about whether Act 60 as applied to the Stowe School District violates *Brigham*, resolving such a dispute on the present record would require the Court to speculate not just about how the electorate in that district will react to the new educational funding system, but — because the issue is the equality rather than the suf-

ficiency of educational opportunity — also about how voters in districts with tax bases that differ from Stowe's will react. Cf. *id.* at 254, 692 A.2d at 389 (noting that disparities in education funding caused by previous funding formula were shown dramatically by hard data depicting per-student expenditures varying by district from $2,979 to $7,726).

We also bear in mind that plaintiffs appear here not as taxpayers but as public school students seeking constitutionally sufficient educational opportunities. Even assuming arguendo that the general state support grant does not itself provide for a constitutionally sufficient educational system, something plaintiffs characterize as the "main thrust" of their argument, the most this would prove is that Act 60 imposes certain obligations on taxpayers that differ from their obligations under the previous school funding formula. Any effect on plaintiffs, as students in the Stowe School District, remains wholly speculative and thus not reasonably to be anticipated.

Any ruling we might make on this record as to the issues plaintiffs raise would be no more than an advisory opinion, not based on any demonstrated violation of plaintiffs' right to equal educational opportunity or any other injury to plaintiffs. Because the record does not demonstrate the existence of an actual or justiciable controversy, the trial court was without jurisdiction to entertain the merits of plaintiffs' claims. The judgment entered in favor of defendant State of Vermont must be vacated and the case dismissed.

*Vacated and remanded with directions to dismiss plaintiffs' complaint.*