**STOWE CITIZENS FOR RESPONSIBLE GOVERNMENT v. STATE of Vermont**

[730 A.2d 573]

No. 98-116

March 3, 1999. Plaintiff Stowe Citizens for Responsible Government, Inc. appeals the superior court's summary judgment ruling rejecting plaintiff's constitutional challenge to the Equal Educational Opportunity Act of 1997 ("Act 60"). Plaintiff contends that by relying on the discretion of voters in property-wealthy communities to provide additional tax revenue to supplement state funding for public education, Act 60 unconstitutionally delegates legislative authority to those communities and fails to satisfy the State's obligation to provide all Vermont schoolchildren a substantially equal educational opportunity as established in *Brigham v. State*, 166 Vt. 246, 268, 692 A.2d 384, 397 (1997). We conclude that Act 60 does not unconstitutionally delegate

legislative authority to the Town of Stowe or any other Vermont municipality. Further, because plaintiff has not presented an actual or justiciable controversy with respect to its contention that Act 60 fails to satisfy the State's constitutional obligation under *Brigham*, we do not reach the merits of that argument. Accordingly, we affirm the superior court's judgment.

The material facts are undisputed. As of the 1997-1998 school year, before the enactment of Act 60, the Stowe school district was spending approximately $8845 per student, compared to a statewide average of $6447. In fiscal year 1997, property in Stowe was taxed at a rate of approximately seventy-one cents per $100 of grand list value, compared to the statewide average of $1.33. Thus, under the previous funding system, Stowe was able to tax at a low rate and yet raise revenues for education well above that collected by property-poor towns.

In *Brigham*, 166 Vt. at 249, 692 A.2d at 386, this Court held that that system, with its substantial dependence on local property taxes and resulting wide disparities in revenues available to local school districts, was unconstitutional because it deprived children of an equal educational opportunity. Following our decision, the Legislature passed Act 60, with a stated objective of making "educational opportunity available to each pupil in each town on substantially equal terms" in accordance with *Brigham*. 16 V.S.A. § 4000(a). The Act aimed to provide school districts with substantially equal access to similar per-pupil revenues through a combination of state block grants and local education spending. See 16 V.S.A. § 4000(b) (statement of policy).

The first equalization mechanism in Act 60 is a statewide property tax of $1.10 per $100 of grand list value, 32 V.S.A. § 5402(a), which funds a "general state support grant" determined on a per-pupil basis. 16 V.S.A. § 4011. For fiscal year 1999, the amount of the general state

support grant is $5000 per student, adjusted for inflation from fiscal year 1997. See 1997, No. 60, § 24(a). The second equalization mechanism authorizes school districts, through approval by the local electorate, to raise additional revenue to fund education above the state support grant, but subjects the additional funds to an equalized-yield formula so that any specified property tax rate will produce the same funds per student in every district. See 16 V.S.A. §§ 428, 511, 4025-4028. Under this mechanism, a portion of the additional local funds raised by property-wealthy districts are redistributed to property-poor districts to equalize the yield. See *id.* § 4027. The equalized-yield provision is designed to ensure that districts with the same per-pupil spending will have similar property tax burdens.

Because Stowe is a property-wealthy district, a portion of any funds raised through taxes imposed on Stowe property to support spending above the State's base grant would be redistributed to property-poor districts. Under Act 60's transitional provisions, Stowe's tax rate will increase to approximately $1.00 in fiscal year 1999, and to an undetermined rate for the year 2000. See Act 60, §§ 24(b)(2), 50(a). Should Stowe vote for additional education spending before the year 2002, another transitional provision would allow Stowe to keep as much as seventy-three percent of the local funds it raised. See *id.* § 24(b)(1)(B) (limiting percentage of local funds that would have to go to state fund). Stowe could also raise additional funds for public education through local option taxes. See 24 V.S.A. § 138 (authorizing municipalities to levy tax on sales, rooms, meals, and alcoholic beverages from 1999 to 2002 to facilitate transition and reduce dislocations that may be caused by Act 60). Assuming that there are no additional changes to Act 60, Stowe could pay up to seventy percent of locally raised revenue into the state education fund after the transitional provisions expire.

With this background, we examine plaintiff's challenge to Act 60. Plaintiff is a nonprofit corporation comprised of Stowe taxpayers and parents. In October 1997, plaintiff filed a complaint for declaratory relief, challenging the constitutionality of Act 60. The superior court granted the State's motion for summary judgment, finding no constitutional deficiency to Act 60. On appeal, plaintiff contends that an integral part of Act 60's attempt to meet the State's obligation under *Brigham* — its equalized-yield mechanism — improperly relies on uncertain political processes in the property-wealthy communities to provide additional funding for education beyond the base amount available from the State's block grant. According to plaintiff, by relying on the discretion of voters in property-wealthy communities to meet the State's obligation under *Brigham,* Act 60 unconstitutionally delegates legislative authority to those communities.

Plaintiff's attempt to cloak its argument under the legal mantle of the delegation doctrine does not withstand scrutiny. "In this State as elsewhere it is a doctrine well established and frequently reiterated by the courts that the functions of the Legislature *which are purely and strictly legislative* cannot be delegated but must be exercised by it alone." *Village of Waterbury v. Melendy,* 109 Vt. 441, 448, 199 A. 236, 239 (1938) (emphasis added); *State v. Auclair,* 110 Vt. 147, 162, 4 A.2d 107, 115 (1939) (accord). This doctrine is not violated when the Legislature vests municipalities "with certain powers of legislation as to matters purely of local concern." *Melendy,* 109 Vt. at 448, 199 A. at 239; 2 E. McQuillin, The Law of Municipal Corporations § 4.08, at 27 (3d ed. 1994) ("[I]t is a fundamental rule that the power to make laws cannot be delegated, except to the extent that such power may be conferred upon municipal corporations for local self-government."). Nor is the doctrine violated when the Legislature

gives municipalities the authority or discretion merely to execute, rather than make, the laws. See *Melendy,* 109 Vt. at 451, 199 A. at 241. The doctrine is violated, however, when the delegation of authority is so vague and uncertain that, in exercising its discretion, the municipality must, in effect, make the law. E.g., *id.* at 453, 199 A. at 241 (statute empowering board to petition for apportionment of state-incurred expenses among towns benefitting from flood control projects unconstitutionally delegated legislative authority because it failed to state nature or kind of benefits that would trigger apportionment of expenses, failed to provide any rule or standard by which benefits would be determined or assessments made, and failed to indicate any policy or plan for apportionment of expenses).

Here, the challenged equalized-yield provision contained in Act 60 specifies all of the details of the mechanism for equalizing the funding of public education. Further, while local town votes, including those of property-wealthy towns, may have some statewide impact on the level of funding for public education, the fact remains that Act 60's equalized-yield provision does not delegate the Legislature's *lawmaking* functions. Generally, a statutory provision that does not take effect unless assented to by the voters of a municipality "is not invalid as a delegation of legislative power, provided the statute is complete in itself." McQuillin, *supra,* § 4.10, at 30 (noting that most jurisdictions permit legislature to condition operation of statute upon vote of people); see *State v. Parker,* 26 Vt. 357, 363, 365 (1854) (Legislature may enact laws whose operation or suspension depend upon contingency; numerous examples exist of statutes that are dependent upon future contingencies for their very vitality). Neither is a law invalid because it delegates to municipalities powers concerning essentially state functions, such as education or taxation. See McQuillin,

*supra,* § 4.13, at 44-45; see also *Brigham,* 166 Vt. at 259, 264, 692 A.2d at 392, 395 (Legislature has implemented education clause by authorizing school districts to raise revenue through local property taxes, but neither this nor any other means of financing public education is constitutionally mandated; state may delegate to local towns authority to finance and administer schools within their borders, but it cannot abdicate its basic responsibility for education). Act 60 does not unconstitutionally delegate legislative authority to Vermont municipalities.

Stripped of its delegation-doctrine vestment, plaintiff's principal argument is that because Act 60's equalized yield provision depends on voters in property-wealthy districts to provide additional funds for education beyond the basic state grant, it fails to satisfy the State's constitutional obligation as established in *Brigham.* This is the same argument raised by the plaintiffs in *Anderson v. State,* 168 Vt. 641, 723 A.2d 1147 (1998), which we declined to address because the plaintiffs did not present an actual or justiciable controversy. *Id.* at 644, 723 A.2d at 1149. As in *Anderson,* we decline plaintiff's invitation to consider invalidating Act 60 based on predictions that future events will demonstrate the statute's failure to fulfill the State's constitutional obligations. See *id.* at 643, 723 A.2d at 1149 (for actual or justiciable controversy to exist, consequences of dispute must be reasonably expected and not based upon fear or anticipation; whether voters in Stowe or other towns will approve extra funding for education is "a debatable prediction of voter behavior, not a fact we can recognize"); see also *Kimbell v. Hooper,* 164 Vt. 80, 88, 665 A.2d 44, 49 (1995) (law will not be declared unconstitutional on its face based on possibility that it might be unconstitutionally enforced under speculative circumstances).

Finally, we find no merit to plaintiff's brief argument that Act 60 fails to con-

sider factors such as economies of scale with respect to school districts in towns the size of Stowe. Contrary to plaintiff's assertion, Act 60 does take into account differences in financial burdens on school districts resulting from size and other factors. See Act 60, § 22(d) (upon application, commissioner may pay extraordinary transportation expenditures incurred due to geographic or other conditions); § 93 (public schools with less than 100 students are eligible for support grants; commissioner is required to conduct study of small schools to evaluate ways to mitigate financial burdens). In any event, we emphasized in *Brigham* that "*absolute* equality of funding is neither a necessary nor a practical requirement to satisfy the constitutional command of equal educational opportunity. . . . [D]ifferences among school districts in terms of size . . . and other factors will invariably create unavoidable differences in per-pupil expenditures." 166 Vt. at 268, 692 A.2d at 397 (emphasis in original). Plaintiff has failed to make any showing that circumstances in Stowe create constitutionally significant disparities in funding among school districts under Act 60.

*Affirmed.*